## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MIRIAM G.,

                              Claimant,

                    v.                              No. 22 C 6717

FRANK BISIGNANO,                                    Magistrate Judge Jeffrey T. Gilbert
Commissioner of Social Security,

                              Respondent.

## MEMORANDUM OPINION AND ORDER

Miriam G.[1] ("Claimant" or "Plaintiff") seeks judicial review of the final decision of the Acting Commissioner of Social Security[2] ("Commissioner") denying her application for a period of disability and disability insurance benefits. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 6]. After reviewing the record and the parties' arguments, Plaintiff's Brief in Support of Reversing or Remanding Commissioner's Decision [ECF No. 17] is granted, and the Defendant's Motion for Summary Judgment [ECF No. 22] is denied.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using her full first name and the first initial of the last name.

[2] Frank Bisignano was appointed as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he automatically is substituted as the named defendant in this case.

# BACKGROUND

## I.    Procedural History

On May 6, 2020, Claimant filed an application for a period of disability and disability insurance benefits, as well as for supplemental security income. (R.14). Claimant alleged a disability beginning March 4, 2020. (R.14). The application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.14). A telephone hearing was held on January 5, 2022, at which Claimant was represented by an attorney. (R.14). A vocational expert also testified during the hearing. (R.14). The ALJ issued a decision on January 28, 2022, finding Claimant not disabled under the Social Security Act denying benefits. (R.14-28). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R.1-6). Claimant filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II.    The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must determine whether: (1) the claimant has performed any

substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairments or combination of impairments meet or equal any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in any substantial gainful activity since March 4, 2020, the alleged onset date. (R.16). At step two, the ALJ found Claimant had the following severe impairments: hearing loss, left ear; arrhythmia; and brain tumor, benign. (R.17). The ALJ also found Claimant has a medically determinable impairment of obesity. (R.17). At step three, the ALJ found that Claimant did not have any impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925, and 416.926. (R.17-22). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in her ability to sit, stand or walk throughout an 8-hour workday. The claimant can occasionally climb ramps and stairs, and she can

occasionally stoop, kneel, balance, crouch, and crawl, but she can never climb ladders, ropes, or scaffolds. The claimant can use her non-dominant left upper extremity to no more than occasionally push, pull, or reach in all directions other than overhead. She can never reach overhead with her left upper extremity. She is able to hear normal conversation in environments that are no louder than an average office environment. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery.

(R.22). At step four, the ALJ found that Claimant was unable to perform any of her past relevant work. (R.26-27). At step five, the ALJ found there were other jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of rental clerk, counter clerk, and usher. (R.27-28). Based on these findings, the ALJ denied Claimant's applications for benefits and found her not disabled under the Social Security Act from March 4, 2020 through the date of the decision. (R.28).

## DISCUSSION

### I. Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of

4

overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." ... At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). However, "although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it. The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citations omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841

(7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

## II.    Analysis

Claimant argues the ALJ's decision cannot stand in this case because: (1) the RFC was not supported by substantial evidence; and (2) the ALJ's evaluation of Claimant's subjective symptoms was not supported by substantial evidence. *See* Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 17] ("Motion"). As discussed further below, because the Court finds Claimant's challenge to the RFC with respect to the failure to accommodate restroom breaks warrants remand, the Court declines to consider the other alleged errors in Claimant's motion.

### A.    The failure to include any accommodation for frequent restroom breaks in the RFC was based on a factual error regarding Claimant's medication.

Claimant argues the ALJ erred in failing to accommodate her need for frequent restroom breaks in the RFC, an error that Claimant says was based on the ALJ's factual error in concluding the medical record did not show Claimant was prescribed any diuretic medications during the relevant time period. Motion [ECF No. 17] at 6; Plaintiff's Reply Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 24] ("Reply") at 1.

The ALJ acknowledged Claimant's testimony that she was prescribed a diuretic medication for "pericardial effusion and hypertension" that caused her to use

the restroom frequently but concluded the record did not evidence such a prescription, either for pericardial effusion in 2018 or on discharge following Claimant's tumor resection surgery in March 2020. (R.24). Specifically, the ALJ stated:

> The claimant testified that the diuretic she was prescribed caused her to use the washroom every 15 minutes. If the claimant had reported this medication side effect to any treating care provider, the report was not documented. Initially, she testified that she was prescribed a diuretic to help with pericardial effusion and hypertension. The treatment evidence showed she was diagnosed with pericardial effusion in October 2018 (Exhibit 17F, p. 85) and it is reasonable to infer that diuretic was prescribed at that time. However, the cardiologist's treatment notes showed that after this problem was diagnosed, the claimant was started on aspirin and colchicine, and neither medication is classified as a "diuretic."

> The claimant later testified that her problem with needing to use the washroom every 15 minutes started during her time in the hospital following the tumor resection surgery. Review of the treatment record documenting her time in the hospital in March 2020 does show the claimant was given two medications during that time to help control high blood pressure (Exhibit 7F, p. 215). The first was hydralazine, which is not a diuretic but a vasodilator, and the second was nifedipine, which is not a diuretic but a calcium-channel blocker. The treatment notes documenting the hospitalization did not present the claimant needing to urinate four times each hour for any reason.

(R.24).

The ALJ's opinion clearly contains factual errors with respect to Claimant's prescribed treatment with medication that has a diuretic effect. The ALJ cited a medical record from Claimant's cardiologist as showing Claimant was diagnosed with pericardial effusion in October 2018 and prescribed aspirin and colchicine but noted "neither medication is classified as a 'diuretic.'" (R.24) (citing Ex. 17F at p. 85). While the cited July 16, 2021, report does reference Claimant's diagnosis of pericardial effusion and that she was prescribed colchicine and aspirin, the ALJ did not

7

acknowledge the cardiologist's reference on that same page of the record to Claimant's prescription of another diuretic medication in 2021. (R.2377-2386 at 2377 (Ex. 17F at p, 85) (July 16, 2021, report from Claimant's cardiologist stating she had "some peripheral edema" and was "started on hydrochlorothiazide a couple months ago with resolution of the peripheral edema, and no orthostatic symptoms.")). Claimant says hydrochlorothiazide (or HCTZ) is a diuretic and the Commissioner does not dispute this characterization (which is also confirmed by other references in the medical record). *See* Motion [ECF No. 17] at 6 n.4; *see also* (R.2381 (treating cardiologist notes from July 16, 2021 noting "She did have some peripheral edema resolved with low intensity diuretics.")).

In addition, although the ALJ acknowledged Claimant's testimony that she was prescribed a diuretic in 2020 following her tumor resection surgery, the ALJ rejected that testimony because the treatment record at the time of her discharge from the hospital in March 2020 showed only two medications prescribed to control high blood pressure, neither of which the ALJ said was a diuretic. (R.24 (citing Ex. 7F, p. 215)). There are several factual errors related to the ALJ's conclusion that the record did not reflect that Claimant had been prescribed a medication with diuretic effects after she was treated for pericardial effusion in 2018.

First, Claimant's cardiologist's notes do report that Claimant's hypertension was treated with hydrochlorothiazide. (R.2332 (cardiologist progress notes dated March 5, 2021: "She has a history of hypertension, treated only with hydrochlorothiazide."); *see also* (R.2419 (September 10, 2021 cardiologist progress

notes: "She had a history of hypertension treated with hydrochlorothiazide."); R.2426 (progress notes from September 10, 2021 visit noting "Systemic hypertension appears to be well controlled hydrochlorothiazide."). It is not clear precisely when Claimant's hypertension was first treated with this medication, but Claimant's treatment records do report a prescription for hydrochlorothiazide in January 2021 which continued to be prescribed throughout 2021. (R.2332 (cardiologist treatment progress notes dated March 5, 2021 reporting Claimant continued to take hydrochlorothiazide); R.2396 (same for July 29, 2021 visit); R.2431 (after visit summary from September 10, 2021 visit to cardiologist reporting Claimant was prescribed hydrochlorothiazide); R.2292 (Alivio Medical Center office visit report from November 10, 2021 listing hydrochlorothiazide as current medication)). The ALJ failed to address this record evidence.[3]

Second, Claimant argues the ALJ failed to address records showing she was prescribed HCTZ for ankle swelling in 2020. Motion [ECF No. 17] at 6. Claimant's medical records do reflect that she was prescribed HCTZ in or around July 2020 for ankle and/or leg swelling. (R.2019 (12/13/2020 office visit to Alivio Medical Center reporting Claimant "presents for follow up on leg swelling since starting HCTZ as a water pill in July."); R.1999 (Midtown Physicians report dated November 17, 2020 stating Claimant's medications includes "Tylenol and HCTZ 25 mg q.d. for ankle swelling"). The ALJ did not address this evidence when discussing Claimant's

---

[3] This is consistent with Claimant's argument that the record reflects she was prescribed HCTZ as a 'water pill' after 2018, as well as with Claimant's lay understanding, as reflected in her testimony at the hearing, that the water pills she was prescribed were for high blood pressure and to treat liquid around her heart. Motion [ECF No. 17] at 6; (R.46-47, 50).

testimony regarding her prescriptions, instead focusing solely on whether Claimant was prescribed such medication upon discharge from the hospital following her surgery in March 2020. (R.24).

The Commissioner responds by pointing to Claimant's testimony that she was prescribed "water pills" to "tak[e] out the liquid out of my body, because I hold liquid around my heart" and that she was given water pills when she was discharged after the March 4, 2020 surgery. Response [ECF No. 23] at 3. For this reason, the Commissioner argues the ALJ was justified in concluding the "medication for liquid around her heart" was prescribed for pericardial effusion only and not ankle swelling, and thus the Commissioner says the ALJ did not need to explore other potential causes for Claimant's need for frequent restroom breaks. [*Id.*]

The Court disagrees. While Claimant's testimony as to when and for what condition she was prescribed "water pills" may not have been precise, Claimant clearly testified that she needed to use the restroom frequently due to her medication. (R.45-56, 50-51). The ALJ relied on Claimant's lay understanding about her "water pill" prescriptions to narrowly focus his review of the record, and, as a result, the ALJ failed to resolve relevant factual questions about whether and when Claimant was prescribed medications with diuretic effects during the relevant period. As noted above, the ALJ even failed to address a reference to a prescription for hydrochlorothiazide, a diuretic medication, that is found on the same page of Claimant's cardiologist's treatment notes cited and relied upon by the ALJ for the conclusion that Claimant had no such prescriptions. *See Fabian v. Dudek*, 2025 WL

10

947922, at *4 (N.D. Ill. Mar. 30, 2025) (Kendall, J.) (ALJ must "confront the evidence that does not support [his] conclusion and explain why that evidence was rejected," *citing Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)). As discussed above, there are many references to such prescriptions in the medical record. Given that the ALJ ultimately rejected Claimant's testimony that she needs to take frequent restroom breaks based on his conclusion that the medical record did not evidence any prescriptions for diuretic medications, it was error for the ALJ not to consider and address the full record as to Claimant's prescriptions during the relevant period. (R.24).[4]

Remand is appropriate because the ALJ's opinion that Claimant's need for frequent restroom breaks did not need to be accommodated in the RFC was premised on a factual error – namely, that Claimant was not prescribed or taking a diuretic medication during the relevant time period. *See, e.g., Sarchet v. Chater*, 78 F.3d 305, 308–09 (7th Cir. 1996) ("When the decision of that tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different

---

[4] The ALJ also noted the medical record did not contain reports or complaints of this side effect. (R.24). Given that Claimant was prescribed a diuretic medication throughout the relevant period and the ALJ failed to address those prescriptions, the Court does not view the absence of reports of frequent urination as a side effect to provide a basis, standing alone, to dismiss Claimant's testimony about how often she required restroom breaks. This factual error also distinguishes this case from *Tina W. v. Saul*, 2021 WL 510315, at *2 (N.D. Ill. Feb. 10, 2021), cited by Commissioner, where the ALJ noted "medical records showed that Plaintiff 'rather consistently' denied bowel problems." By contrast, here the ALJ erroneously relied on the purported absence of records confirming Claimant had been prescribed any diuretic medications rather than any references to Claimant having denied side effects from those medications in the record.

conclusion, in which event a remand would be pointless."); *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("A reversal and remand may be required, . . . if the ALJ based the decision on serious factual mistakes or omissions," citing *Sarchet*, 78 F.3d at 309).

This factual error is not harmless. A full consideration of the record as to diuretic medications could be relevant to whether any need for frequent restroom breaks should have been included in the RFC, which in turn, could be relevant to whether Claimant was able to perform work in the national economy given the vocational expert's testimony that Claimant could not take breaks that would result in her being off task more than 15 percent of the day. *See* Motion [ECF No. 17] at 6; (R.57). *See Lisa G. v. Kijakazi*, 2022 WL 2704056, at *3 (N.D. Ill. July 12, 2022) (collecting cases) (remanding where "ALJ erred by not fulsomely addressing Plaintiff's asserted need to use the bathroom and/or not providing any work-related limitation accounting for the number of bathroom breaks Plaintiff would need to take throughout the workday") ("To the extent Plaintiff's testimony and/or other record evidence supported the need for frequent bathroom breaks, the ALJ was required to incorporate related limitations into the RFC, which he also did not do."); *Wright v. Berryhill*, 2017 WL 663162, at *12 (N.D. Ill. Feb. 16, 2017) (remanding where "the ALJ did not consider whether Claimant's constant need for bathroom breaks would create an unacceptable off-task time for sustainable employment."). Notably, the Commissioner does not argue any factual error by the ALJ in reviewing the record as to Claimant's medications is harmless.

To be clear, the Court does not take a position on whether or what additional accommodations may be warranted. The lack of any accommodation for restroom breaks in the current RFC, however, is not supported by substantial evidence given the documented factual errors regarding Claimant's diuretic medication. Accordingly, remand is warranted to consider and address the record regarding Claimant's prescribed medications with diuretic effects.

### CONCLUSION

Accordingly, for all the reasons set forth above, Plaintiff's Brief in Support of Reversing or Remanding Commissioner's Decision [ECF No. 17] is granted, and the Defendant's Motion for Summary Judgment [ECF No. 22] is denied.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 27, 2025